IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA WESTERN DIVISION

Case No.: 5:25-CV-00686-D

**FILED**
OCT 29 2025
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____MM_____DEP CLK

ADRIENNE J. JOHNSON )
)
)
*Plaintiff*, )
) **COMPLAINT**
v. )
)
EVERYTOWN FOR GUN SAFETY ACTION )
FUND, INC., )
)
*Defendants.* )

NOW COMES the Plaintiff, Adrienne J. Johnson, hereby files her Complaint against the Defendant, Everytown For Gun Safety Action Fund, Inc, alleging and stating as follows:

## INTRODUCTION

1. Plaintiff Adrienne J. Johnson brings this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.), to remedy unlawful discrimination, retaliation, and wrongful termination based on her race, age, and engagement in protected activity.

2. Despite meeting or exceeding all performance expectations, Plaintiff was subjected to race-based hostility, excluded from organizational protections, retaliated against for reporting discrimination, and ultimately terminated after raising these concerns.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper in this district under 28 U.S.C. § 1391(b), as Plaintiff resides in Wake County, North Carolina and the unlawful employment practices occurred within this district.

## PARTIES

5. Plaintiff Adrienne Johnson is a 59-year-old Black woman and a resident of Raleigh, North Carolina.
6. Defendant Everytown for Gun Safety is a national nonprofit organization with its principal place of business in New York, and operations throughout the U.S., including North Carolina.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 433-2025-03400.
8. On July 31, 2025, the EEOC issued a Dismissal and Notice of Right to Sue.
9. Plaintiff files this action within 90 days of receiving that notice.
10. Although the EEOC dismissed the charge as untimely, Plaintiff asserts that her charge was in fact timely under the 300-day rule applicable to North Carolina residents and/or should be considered timely under the doctrine of equitable tolling, as she relied on explicit instructions from EEOC personnel who confirmed her deadline was in August 2025.

## FACTUAL BACKGROUND

11. Plaintiff began working for Defendant as an Organizing Manager in Southern Region for North Carolina and Arkansas in January 2023.

12. Throughout her tenure, she received strong performance evaluations, exceeded state-level campaign goals, and was consistently recognized by leadership for her positive contributions as Performance Reviews and feedback from Volunteers reflect.

13. Plaintiff actively enforced DEI standards addressed problematic volunteer behavior in violation of the Volunteer Agreement Form (VAF) and advocated for marginalized communities most impacted by gun violence. She went beyond the call of duty to assist her team and anyone who needed it.

14. In doing so, she became the target of racist microaggressions in North Carolina, retaliatory volunteer conduct in North Carolina, and lack of support from leadership as she, a Black woman, was not taken seriously on the Southern Region team by management. Plaintiff complained about White volunteer deeming her "incompetent" and stated she was afraid of 'being perceived as racist".

15. She reported these issues to multiple members of leadership, including former Organizing Director (OD) Jamie Ford (2023), and new immediate supervisor, Associate Organizing Director, Brandon Rhodes (2024).

16. Plaintiff experienced change in treatment after complaining to her Supervisor Brandon Rhodes, a Black man, about his friend and Supervisor, Kenneth Gonzales for violating Everytown's Code of Conduct, specifically related to harassment and non-retaliation Malpractice of Management Team, which violated Everytown's Code of Conduct. Brandon developed a leadership style by overcompensating to prove his merit to

volunteers and his Supervisor-Friend, Kenneth Gonzales at Plaintiff's expense. It included upholding White superiority at her expense by debilitatingly micromanaging her, comparing her to White members of other teams, and referring to select group of White volunteers as "key" Leads, the same Leads who were bullying her.

17. Plaintiff made several requests for Supervisor to show interest and have respect for her role as OM in the South. She complained about lack of protection and support for her role in a state that had a reputation for being problematic for plethora of reasons prior to her being hired. Her leadership inspired the Chapter to succeed, though a select clique of White volunteers resisted.

18. On 8/29/2024, a volunteer and member of a select clique of problematic volunteers, the same volunteers who retaliated against the Plaintiff for Jamie Ford's mishandling of the justifiable dismissal of their friend from leadership, submitted a joint leadership resignation letter and made accusations that were mean, untrue, and unfounded. They included an email addressed to the Plaintiff and Jamie from the friend that had been dismissed the previous year. Furthermore, they expected the Plaintiff to appease them and remain in her place. The letter was withheld from her for five days by management, Kenneth Gonzales, and colleagues. Brandon stated it did not rise to the level of Keneth and he would investigate. The Plaintiff aided in the initial stages of the investigation by offering emails of interaction with the volunteers to dispute their claims. The expectation was that he and the Plaintiff would have a point-by-point discussion. At the very least, listen to her side of the story. The volunteers did not want to adhere to protocols and were misguided by their LGL, who has been documented for refusing to follow guidance and protocols. However, it did not happen nor were any Black Volunteer Leads or Leads from

the other five Chapter Groups interviewed. Not one member of management asked for my side of the story. Plaintiff complained she was being treated like a criminal and her voice was being disregarded, dismissed, and silenced as OM of NC. HR stated they were following Brandon's lead and did not engage in due diligence for the truth. It was emotionally abusive and intentional. Plaintiff was being set up to fail.

19. On September 3, 2024, Plaintiff made a concerted effort to meet with Angela Ferrell-Zabala, Executive Director of Moms Demand Action via her Chief of Staff to discuss overt discriminatory and retaliatory treatment from a member of the Executive Management Team, racist volunteers, tone-deafness of HR and management team, and the silencing of her voice ( and others) while being treated differently as a Black woman OM of NC. This sentiment was documented by several of Plaintiff's colleagues. Scheduling conflicts precluded them from meeting. However, similar conversations were shared in 2023 and were always productive and welcomed by her.

20. On September 7, 2024, Plaintiff inquired about lateral promotional role for which she was highly qualified. Supervisor appointed her colleague of another state without her knowledge. Brandon told Plaintiff she was well qualified for the role but should focus on volunteers since she and Kenneth "had your thing" at GSU. Her Supervisor did not advocate for her with the same level of respect shown for her White colleague. Despite being well-informed about the political landscape in NC, having lived and organized over 300 Community Organizers and Canvassers for winning campaigns, her input was not sought. Management consistently undermined her intellectual expertise on the subject. Colleague regularly received credit for the Plaintiff's team's accomplishments, including projects that were collaborative efforts. She was emotionally harassed by being demeaned

in front of colleagues in ways no others were on the team. She was the only OM not considered for the role in her respective state. It became a vicious cycle of gaslighting and emotional abuse.

21. The Defendant has an obligation to provide a safe work environment. However, their negligence to do due diligence in accordance with corporate policy and the law resulted in harassment, discrimination, poor management practices, and a hostile work environment to impact the Plaintiff's career, finances, and mental health while OM of NC.

22. After complaints about being mistreated, unsupported, and bullied by select volunteers that refused to follow guidance or should have been dismissed, Plaintiff was placed on a Performance Improvement Plan (PIP) on October 10, 2024 — widely viewed as pretextual and unsupported. She requested to be transferred from NC as others have been under extenuating circumstances. The request was denied.

23. Despite completing the PIP requirements, Plaintiff was terminated on November 13, 2024, via Zoom, without proper cause or explanation.

24. The Plaintiff believes that violations of the company policies were in retaliation for the Plaintiff bringing forth complaints of experiencing racism and harassment by members of the Defendant's team.

25. Following her termination, Plaintiff remained in contact with HR to access records related to her performance and employment. Her last documented employer communication occurred on February 12, 2025, when she received her 2023 Mid-Year Review.

26. Plaintiff initiated her EEOC charge in early May 2025, confirmed by EEOC portal records and emails.

27. On June 24, 2025, an EEOC representative informed her by phone that she had until August 4, 2025, to file.

28. She filed her charge on July 14, 2025, within 152 days of February 12 and 243 days of her termination — thus, timely under the 300-day rule.

29. On July 2, 2025, EEOC Officer Todd French sent a confirming email, affirming she was within the filing window.

30. Nevertheless, the charge was dismissed on July 31, 2025, as untimely.

## COUNT ONE

### Race Discrimination (Title VII)

31. Plaintiff incorporates paragraphs 1–30 as if fully stated herein.

32. Plaintiff was subjected to unequal treatment, hostile conduct, and termination due to complaints about hostile work environment that facilitated racism and retaliation against its OM.

33. Defendant failed to investigate or protect her, despite internal complaints and corroborating witness reports.

## COUNT TWO

### Age Discrimination (ADEA)

34. Plaintiff is over 40 and was qualified for her position.

35. Younger employees were not subjected to similar disciplinary action or scrutiny.

36. Plaintiff was denied leadership opportunities and ultimately terminated based on "inability to keep up with the team" which was categorically false.

## COUNT THREE

### Retaliation (Title VII and ADEA)

37. Plaintiff engaged in protected activity by reporting discrimination and advocating for herself and others.

38. Defendant retaliated against her by placing her on a PIP and terminating her employment.

39. Defendant's actions were causally connected to Plaintiff's complaints and violated federal law.

## COUNT FOUR

### Equitable Tolling / Right to Sue

40. Plaintiff reasonably relied on multiple EEOC employees' verbal and written assurances that she had until August 2025 to file.

41. Plaintiff was misled by EEOC personnel and acted diligently throughout the process.

42. Any procedural delay should be excused under the doctrine of equitable tolling.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that Defendant violated Plaintiff's rights under Title VII and the ADEA;

b. Award back pay and benefits;

c. Award front pay and/or reinstatement;

d. Award compensatory and punitive damages;

e. Award attorneys' fees and costs;

f. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*Adrienne J. Johnson*
10/29/2025

/s/*Adrienne J. Johnson.*
Adrienne J. Johnson
7020 Mead Lane
Raleigh, NC 27613
Tel:(919) 961-5900
ajaninejohnson@gmail.com
Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, Plaintiff, Adrienne J. Johnson, hereby certifies that a copy of the foregoing Complaint was served on the Defendant via U.S. Mail, Certified Mail, Return Receipt Requested, postage prepaid, to the address listed below:

This the ___ day of _____, 2025.

*/s/Adrienne J. Johnson.*
Adrienne J. Johnson
7020 Mead Lane
Raleigh, NC 27613
Tel:(919) 961-5900
ajaninejohnson@gmail.com
Plaintiff

**SERVED:**

**EVERYTOWN FOR GUN SAFETY ACTION FUND, INC.**

450 Lexington Avenue

New York, NY 10017