IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA WESTERN DIVISION

Case No.: 5:25-CV-686D

FILED

DEC 01 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY PMA DEP CLK

| | | |
|---|---|---|
| ADRIENNE J. JOHNSON<br><br>*Plaintiff,*<br><br>v.<br><br>EVERYTOWN FOR GUN SAFETY ACTION FUND, INC.,<br><br>*Defendants.* | ) | **COMPLAINT**<br>First Amended<br>CASE |

NOW COMES the Plaintiff, Adrienne J. Johnson, hereby files her Complaint against the Defendant, Everytown For Gun Safety Action Fund, Inc, alleging and stating as follows:

## INTRODUCTION

1. Plaintiff Adrienne J. Johnson brings this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.), to remedy unlawful discrimination, retaliation, and wrongful termination based on her race, age, and engagement in protected activity.
2. Despite meeting or exceeding all performance expectations, Plaintiff was subjected to race-based hostility, excluded from organizational protections, retaliated against for reporting discrimination, and ultimately terminated after raising these concerns.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper in this district under 28 U.S.C. § 1391(b), as Plaintiff resides in Wake County, North Carolina and the unlawful employment practices occurred within this district.

## PARTIES

5. Plaintiff Adrienne Johnson is a 59-year-old Black woman and a resident of Raleigh, North Carolina.
6. Defendant Everytown for Gun Safety is a national nonprofit organization with its principal place of business in New York, and operations throughout the U.S., including North Carolina.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 433-2025-03400 (Exhibit 1).
8. On July 31, 2025, the EEOC issued a Dismissal and Notice of Right to Sue (Exhibit 2).
9. Plaintiff files this action within 90 days of receiving that notice.
10. Although the EEOC dismissed the charge as untimely, Plaintiff asserts that her charge was in fact timely under the 300-day rule applicable to North Carolina residents and/or should be considered timely under the doctrine of equitable tolling, *Weathers v Houston Methodist Hospital No.23-20536 (5th Cir 2024)* as she acted with diligence and relied on explicit instructions from EEOC personnel who confirmed her deadline was in August 2025 (Exhibit 3).

## FACTUAL BACKGROUND

11. Plaintiff began working for Defendant as an Organizing Manager in Southern Region for North Carolina and Arkansas in January 2023.

12. Throughout her tenure, she received strong performance evaluations, exceeded state-level campaign goals, and was consistently recognized by leadership for her positive contributions as Performance Reviews and feedback from Volunteers and Colleagues reflect (Exhibits 4-10).

13. Plaintiff actively enforced DEI standards addressed problematic volunteer behavior in violation of the Volunteer Agreement Form (VAF) and advocated for marginalized communities most impacted by gun violence. She went beyond the call of duty to assist her team and anyone who needed it (Exhibit 11).

14. In doing so, she became the target of racist microaggressions in North Carolina, retaliatory volunteer conduct in North Carolina, and lack of support from leadership as she, a Black woman, was not taken seriously on the Southern Region team by management. Plaintiff complained about White volunteer deeming her "incompetent" and stated she was afraid of 'being perceived as racist" (Exhibits 12-15).

15. She reported these issues to multiple members of leadership, including former Organizing Director (OD) Jamie Ford (2023), and new immediate supervisor, Associate Organizing Director, Brandon Rhodes (2024) (Exhibit 16).

16. Plaintiff experienced change in treatment after complaining to her Supervisor Brandon Rhodes, a Black man, about his friend and Supervisor, Kenneth Gonzales for violating Everytown's Code of Conduct, specifically related to harassment and non-retaliation Malpractice of Management Team, which violated Everytown's Code of Conduct.

Brandon developed a leadership style by overcompensating to prove his merit to volunteers and his Supervisor-Friend, Kenneth Gonzales at Plaintiff's expense. It included upholding White superiority at her expense by debilitatingly micromanaging her, comparing her to White members of other teams, and referring to select group of White volunteers as "key" Leads, the same Leads who were bullying her (Exhibit 17) (Everytown Employee Handbook pp (10-22).

17. Plaintiff made several requests for Supervisor to show interest and have respect for her role as OM in the South. She complained about lack of protection and support for her role in a state that had a reputation for being problematic for plethora of reasons prior to her being hired. Her leadership inspired the Chapter to succeed, though a select clique of White volunteers resisted (See Plaintiff Exhibit 12).

18. On 8/29/2024, a volunteer and member of a select clique of problematic volunteers, the same volunteers who retaliated against the Plaintiff for Jamie Ford's mishandling of the justifiable dismissal of their friend from leadership, submitted a joint leadership resignation letter and made accusations that were mean, untrue, and unfounded. They included an email addressed to the Plaintiff and Jamie from the friend that had been dismissed the previous year. The Plaintiff devoted one month reassuring this select group of volunteers she and all leadership welcomed suggestions and feedback. However, the false narrative persisted that if you share, the Plaintiff will "come and get you "or "She will retaliate and have Jamie dismiss you". That was categorically false. Furthermore, they expected the Plaintiff to appease them and remain in her place. The letter presented in August 2024 was withheld from her for five days by management, Kenneth Gonzales, and colleagues. There was no sense of urgency concerning a matter

directly impacting the Plaintiff and her NC team. This was another means to undermine the Plaintiff due to her complaints about him, Kenneth Gonzales. Brandon, who was out of the office, stated it did not rise to the level of Kenneth. The volunteers sent email to the Plaintiff's two White colleagues, one of whom now works in the Plaintiff's former position as Organizing Manager of North Carolina. She assured the Plaintiff she had no knowledge of their Letter. The Plaintiff and he questioned why would the additional recipient of the letter, who had firsthand knowledge of this volunteer, withhold the letter concerning a volunteer in the Plaintiff's state and forward it to Kenneth Gonzales in lieu of the Plaintiff. She refused to share the letter with the Plaintiff. She was treated as "other" and not as equal. Furthermore, Kenneth shared this matter concerning the Plaintiff's state's affairs with an Associate Organizing Director from a different region. No member of management informed the Plaintiff of the letter until 5 days later. The Plaintiff eventually received the letter by alternative means, which is how she became privy to whom it had been sent. Brandon subsequently shared letter document. The problematic volunteers assumed the Plaintiff was their subordinate, which was inaccurate. The volunteers consistently received timely guidance and were positioned for success as special program leaders, due to supportive direction from the Plaintiff and her colleague. The Plaintiff strongly recommended them for recognition during SMART Week. However, this select group of volunteers declined to accept timely guidance from the Chapter Lead, State Lead, and the Plaintiff. Their refusal to listen and follow protocols led to a recommendation for additional training from their State Lead. Their Local Group Lead (LGL) has a documented history of non-compliance with guidance and protocols as witnessed by the Plaintiff's regional colleague. They consistently misinformed their group. Brandon stated he would investigate. The Plaintiff welcomed it and aided in the initial stages of the investigation by offering emails of interaction with the

volunteers to dispute their claims. The expectation was that he and the Plaintiff would have a point-by-point discussion. At the very least, listen to her side of the story. However, it did not happen nor were any Black Volunteer Leads or Leads from the other five Chapter Groups interviewed. Not one member of management asked for Plaintiff's side of the story.

The Plaintiff complained she was being treated like a criminal and her voice was being disregarded, dismissed, and silenced as OM of NC because perceptions were skewed, biased and one-sided. The details of management's skepticism of volunteers accusations were not shared with the Plaintiff. Even if 10% of the allegations were believed to be true, that percentage would remain deceptive . The Plaintiff was never interviewed during fact-finding process, and remained uncertain about which specific allegations damaged her professional reputation. This "investigation" was incomplete and not equitable. HR stated they were following Brandon's lead and did not engage in due diligence for the truth. It was emotionally abusive and intentional. Plaintiff's interactions and communications did not match their deceptive behavior.

Plaintiff remained professional though being set up to fail. Black Women Organizing Managers experience a lower retention rate at Everytown than White Women, White Men, and Black Men in the same roles. Two Black Women OMs have left the organization between November 2024 - November 2025. Both worked on the Southern Region Team. Three Black Women OMs have left the organization within the last two and a half – three years.

19. On September 3, 2024, Plaintiff made a concerted effort to meet with Angela Ferrell-Zabala, Executive Director of Moms Demand Action via her Chief of Staff to discuss overt discriminatory and retaliatory treatment from a member of the Executive Management Team, racist volunteers, tone-deafness of HR and management team, and the silencing of her voice ( and others) while being treated differently as a Black woman OM in NC. This sentiment was documented by several of the Plaintiff's colleagues. Their scheduling conflicts precluded them from meeting. However, similar conversations were shared in 2023 and always productive and welcomed by her. They were slated to meet two weeks after Election Day, 2024. Plaintiff was terminated one week in advance of their meeting (Exhibit 18).

20. On September 7, 2024, Plaintiff inquired about lateral promotional role for which she was highly qualified. Supervisor appointed her colleague of another state without her knowledge. Brandon told Plaintiff she was well qualified for the role but should focus on volunteers since she and Kenneth "had your thing" at GSU. Her Supervisor did not advocate for her with the same level of respect shown for her White colleague. Despite being well-informed about the political landscape and coalitions in NC, having lived and organized over 300 Community Organizers and Canvassers for winning campaigns, her leadership input was not sought.

Management consistently undermined her intellectual expertise on the subject. Colleague regularly received credit for the Plaintiff's team's accomplishments, including projects that were collaborative efforts. She was emotionally harassed by being demeaned in front of colleagues in ways no others were on the team. She was the only OM not considered for the role in their respective state. It became a vicious cycle of gaslighting and emotional abuse.

21. The Defendant has an obligation to provide a safe work environment. However, their negligence to do due diligence in accordance with corporate policy and the law resulted in harassment, discrimination, poor management practices, and a hostile work environment to impact the Plaintiff's career, finances, and mental health while OM of NC. (Plaintiff Exhibit 17) (Everytown Employee Handbook pp. 10-22).

22. After complaints about being mistreated, unsupported, and bullied by select volunteers that refused to follow guidance or should have been dismissed, Plaintiff was placed on a Performance Improvement Plan (PIP) on October 10, 2024 — widely viewed as pretextual and unsupported. She requested to be transferred from NC as others have been under extenuating circumstances. The request was denied.

23. Despite completing the PIP requirements, Plaintiff was terminated on November 13, 2024, via Zoom, without proper cause or explanation.

24. The Plaintiff believes that violations of the company policies were in retaliation for the Plaintiff bringing forth complaints of experiencing racism and harassment by members of the Defendant's team.

25. Following her termination, Plaintiff remained in contact with HR to access records related to her performance and employment. Her last documented employer communication occurred on February 12, 2025, when she received her 2023 Mid-Year Review.

26. Plaintiff initiated her EEOC charge in early May 2025, confirmed by EEOC portal records and emails (Exhibit 19).

27. On June 24, 2025, an EEOC representative informed her by phone that she had until August 4, 2025, to file.

28. She filed her charge on July 14, 2025, within 152 days of February 12 and 243 days of her termination — thus, timely under the 300-day rule. (See Exhibit 20)

29. On July 2, 2025, EEOC Officer Todd French sent a confirming email, affirming she was within the filing window (See Exhibit 20).

30. Nevertheless, the charge was dismissed on July 31, 2025, as untimely.

**COUNT ONE**

**Race Discrimination (Title VII)**

31. Plaintiff incorporates paragraphs 1–30 as if fully stated herein.

32. Plaintiff was subjected to unequal treatment, hostile conduct, and termination due to complaints about hostile work environment that facilitated racism and retaliation against its OM.

33. Defendant failed to investigate or protect her, despite internal complaints and corroborating witness reports.

## COUNT TWO

**Age Discrimination (ADEA)**

34. Plaintiff is over 40 and was qualified for her position.

35. Younger employees were not subjected to similar disciplinary action or scrutiny.

36. Plaintiff was denied leadership opportunities and ultimately terminated based on "inability to keep up with the team" which was categorically false.

## COUNT THREE

**Retaliation (Title VII and ADEA)**

37. Plaintiff engaged in protected activity by reporting discrimination and advocating for herself and others.

38. Defendant retaliated against her by placing her on a PIP and terminating her employment.

39. Defendant's actions were causally connected to Plaintiff's complaints and violated federal law.

## COUNT FOUR

**Equitable Tolling / Right to Sue**

40. Plaintiff reasonably relied on multiple EEOC employees' verbal and written assurances that she had until August 2025 to file.

41. Plaintiff was misled by EEOC personnel and acted diligently throughout the process.

42. Any procedural delay should be excused under the doctrine of equitable tolling.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that Defendant violated Plaintiff's rights under Title VII and the ADEA;

b. Award back pay and benefits;

c. Award front pay and/or reinstatement;

d. Award compensatory and punitive damages;

e. Award attorneys' fees and costs;

f. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Adrienne J. Johnson

*/s/Adrienne J. Johnson.*
Adrienne J. Johnson
7020 Mead Lane
Raleigh, NC 27613
Tel:(919) 961-5900
ajaninejohnson@gmail.com
Plaintiff

December 1, 2025

## CERTIFICATE OF SERVICE

The undersigned, Plaintiff, Adrienne J. Johnson, hereby certifies that a copy of the foregoing Complaint was served on the Defendant via U.S. Mail, Certified Mail, Return Receipt Requested, postage prepaid, to the address listed below:

This the 1st day of December, 2025.

*/s/Adrienne J. Johnson.*
Adrienne J. Johnson
7020 Mead Lane
Raleigh, NC 27613
Tel:(919) 961-5900
ajaninejohnson@gmail.com
Plaintiff

Adrienne J. Johnson

**SERVED:**

**EVERYTOWN FOR GUN SAFETY ACTION FUND, INC.**

450 Lexington Avenue

New York, NY 10017